# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION
# CIVIL ACTION NO. 4:18-CV-00017-HBB

**LINDA WILLIAMS**                                                               **PLAINTIFF**

**VS.**

**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security**                                 **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Linda Williams seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff (DN 14) and Defendant (DN 19) have filed a Fact and Law Summary.  For the reasons that follow, the undersigned orders that judgment be granted for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10).  By Order entered May 30, 2018 (DN 11), the parties were notified that oral arguments would not be held unless a written request was filed and granted.  No such request was filed.

### FINDINGS OF FACT

Williams filed an application for Supplemental Security Income (SSI), on April 11, 2011 (DN 9-5 PageID # 292).  The application claimed Williams's disability began on March 14, 2011

and is the result of a "weak heart" and "breathing problems" (DN 9-6 PageID # 342-346). Administrative Law Judge Kevin R. Martin (ALJ) conducted a hearing on May 23, 2013 (DN 9-2 PageID # 130-184). Williams was present and testified. (Id. at 137). Sharon Lane was also present and testified as an impartial vocational expert (Id. at 176).

In a decision dated August 1, 2013, ALJ Martin evaluated Williams's disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Id. at 112). At the first step, the ALJ found Williams has not engaged in substantial gainful activity since April 11, 2011, the application date (Id. at 114). At the second step, the ALJ determined that Williams has the following severe impairments: non-ischemic cardiomyopathy status post single chamber automated implantable cardioverter-defibrillator, hypertension, emphysema; and degenerative disc disease of the cervical spine (Id.). At the third step, the ALJ concluded that Williams does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR 404, Subpart P. Appendix 1 (Id. at 115).

At the fourth step, the ALJ found Williams has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with certain limited exceptions (Id. at 116). The ALJ determined Williams can perform past relevant work as an insurance specialist and other jobs in available in the national economy (Id. at 121-122). The ALJ ruled Williams has not been under a disability since April 11, 2011 (Id. at 123).

Williams timely filed a request to the Appeals Council to review the ALJ's decision (DN 9-10 PageID # 1342). Her request was denied (Id.). Williams then sought review of the decision from this Court. This Court reversed the Commissioner's decision and remanded the matter for further consideration (Id. at 1349).

The ALJ reconsidered Williams's case and issued an unfavorable opinion (DN 9-9 PageID # 1241). The ALJ reached the same conclusions at steps 1-3 and the residual functional capacity at the fourth step as the first decision. However, the new ruling found Williams had no past relevant work. (Id. at 1245-1256). At the fifth step, the burden shifts to the Commissioner to show there is a significant number of jobs in the national economy. Here, the ALJ found that Williams can perform a significant number of jobs in the national economy (Id. at 1255-1256). The ALJ found Williams has not been under a disability from April 11, 2011 through the date of the decision, March 8, 2017 (Id. at 1256). The Appeals Council again denied Williams's request for review (Id. at 1235). Williams returns to this Court to reverse and/or remand the ALJ's decision (DN 14-1 PageID # 2211).

## CONCLUSIONS OF LAW

### Standard of Review

Review by this Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (DN 14-1 PageID # 1235). When the Appeals Council denied Williams's request for review of the ALJ's decision, it became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *See* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. § 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §416.920. The evaluation proceeds as follows:

    1)     Is the plaintiff engaged in substantial gainful activity?

    2)     Does the plaintiff have a medically determinable impairment or combination of impairments that satisfies the duration

> requirement and significantly limits his or her ability to do basic work activities?
>
> 3) Does the plaintiff have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?
>
> 4) Does the plaintiff have the residual functional capacity to return to his or her past relevant work?
>
> 5) Does the plaintiff's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step (DN 9-9 PageID # 1255-56).

### Challenged Findings

Williams is now challenging the ALJ's finding that she has the residual functional capacity to perform a range of light work as defined in 20 C.F.R. §967(b), with certain limitations. Specifically, Williams alleges the ALJ erroneously discounted the opinion of her treating physician, Dr. Paul Moore, and gave strong weight to the opinion of Dr. David Swan, the non-examining state agency physician. (DN 14-1 Page ID # 2211-2218). Williams also contests the ALJ's finding at step five that she can perform a significant amount of jobs in the national economy (DN 14-1 PageID # 2223).

### A. Step Four

1. Williams's Argument

Williams argues the weight assigned to the opinion of her treating physician, Dr. Paul Moore, is not supported by substantial evidence. Williams complains that the ALJ's decision was based on inconsistencies between the controlling physicians' opinion and objective medical evidence but adds that the ALJ "provided no reasoning as to why any of this evidence was so inconsistent to not afford great or controlling weight to Dr. Moore's opinion" (Id. at 2214).

Williams enumerates objective medical evidence she believes supports Dr. Moore's medical opinion (Id. at 2215).

2. Commissioner's Argument

The Commissioner argues the ALJ's decision that Williams possessed the residual functional capacity to perform less than the full range of lightwork is supported by substantial evidence (DN 19 Page ID # 2238). The Commissioner asserts that the ALJ relied on record evidence and testimony and correctly discounted the treating physician's opinion because it was primarily based on Williams's subjective assertions rather than objective medical evidence. (Id.) Moreover, the Commissioner claims the ALJ appropriately applied the treating physician rule by assessing the factors required by 20 C.F.R § 416.927(c)(2).[1] Wilson v. Comm'r of Soc. Sec., 378 F. 3d 541, 544 (6th Cir. 2004).

3. Discussion - Dr. Paul Moore's Medical Opinion

At the fourth step in the sequential evaluation process, the Administrative Law Judge makes findings regarding the weight assigned to medical source statements in the record[2], the plaintiff's credibility[3], the plaintiff's residual functional capacity[4], the physical and mental

---

[1] These factors are: 1) The length of the treatment relationship and frequency of examinations; 2) nature and extent of the treatment relationship; 3) the relevant evidence that the treating physician relies upon; 4) the consistency of the opinion with the record as a whole; 5) specialization of the treating physician.

[2] 20 C.F.R. § 416.927(c).

[3] In assessing a plaintiff's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the plaintiff and make credibility findings. 20 C.F.R. § 416.929; Social Security Ruling 96-7p.

[4] The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a plaintiff can still do despite his or her physical and mental limitations. 20 C.F.R. § 416.945(a), 416.946. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a plaintiff can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§, 416.929, 416.945(a), 416.946.

demands of the plaintiff's past relevant work, and the plaintiff's ability to return to the past relevant work. *See* 20 C.F.R. § 416.920(e).

At issue here is the ALJ's finding that Williams possessed adequate residual functional capacity to perform certain limited light work. Specifically, how the ALJ weighed competing medical opinions to reach that conclusion. *See* Gayheart v. Commissioner, 710 F. 3d 365, 375 (6th Cir. 2013). Social Security regulations "provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Gayheart, 710 F. 3d at 365 (citations omitted). The treating physician rule mandates that the ALJ give a treating physician's medical opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." Gayheart, 710 F. 3d at 376. If the treating physician's opinion is not given controlling weight the opinion is weighed considering the length, frequency, nature, and extent of the treatment relationship, the treating source's area of specialty, its consistency with the rest of the record, and the extent it is supported by relevant evidence. 20 C.F.R. § 416.927(c)(2)-(6). "Good reasons" must be provided for discounting a treating source opinion. Id. § 416.927(c)(2)-(6). The reasons must be supported by the record and sufficiently specific to make clear to reviewers the weight given to a treating source's opinion and the reasons for the assigned weight. Gayheart, 710, F.3d at 376. (citing Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at 5 (Soc. Sec. Admin. July 2, 1996)). Non-treating and non-examining source opinions are never given controlling weight but are weighed based on the aforementioned factors if the treating-source opinion is deemed not controlling. 20 C.F.R. § 416.927(c).

The procedural requirements for assigning weight to the opinion of a treating source and providing "good reasons" for that weight serve both to ensure adequacy of review and to give the

7

plaintiff a better understanding of the disposition of his case. Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011) (citing Rogers v. Comm'r, 486 F.3d 234, 242 (6th Cir. 2007)). "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the plaintiff's procedural rights.'" Cole, 661 F.3d at 937. The Sixth Circuit has indicated it will not hesitate to remand when it encounters decisions from Administrative Law Judges that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion. Id. at 939 (citations omitted).

Williams alleges the ALJ erroneously discounted a May 16, 2013 report produced by her treating physician Dr. Paul Moore, M.D. (DN 14-1 PageID # 2212). This is the same issue Williams raised in her first appeal to this Court (DN 14-1 PageID # 2210). She now contends that the ALJ failed to properly follow this Court's order issued on October 2, 2015 (Id.). At that time, this Court found the ALJ failed to make separate findings concerning controlling weight and the amount of weight given to the treating source's opinion (DN 9-10 PageID # 1357-1359). In addition, the ALJ's assignment of weight to a non-treating examining physician, Dr. Swan, was not based on substantial evidence (DN 9-10 PageID # 1360).

Contrary to Williams' contention, the ALJ remedied these defects with his second bite at the apple. If an Administrative Law Judge does not give controlling weight to a treating source physician's opinion he must explain that the opinion is not well-supported by medically acceptable clinical or laboratory diagnostic techniques and is inconsistent with the other evidence in the case record. Gayheart, 710 F. 3d at 376. The ALJ explained that Dr. Moore's opinion was not supported by "medically acceptable clinical and laboratory diagnostic techniques" (Id.). The ALJ cited chest imaging and an "Echo" that showed results inconsistent with Dr. Moore's opinion and Williams's reported symptoms (DN 9-9 PageID # 1254). He added that Dr. Moore's opinion was inconsistent with "plaintiff's noted activities of daily living" (Id.). Furthermore, records from

plaintiff's heart specialists indicated her condition is under better control than indicated by Dr. Moore, a family practitioner (Id.).

After deciding Dr. Moore's opinion was not entitled to controlling weight, the ALJ discussed reasons why it was afforded little weight. These reasons, if brief, nevertheless align with the factors contemplated by 20 C.F.R. § 416.927(c)(2)-(6)[5] The ALJ was aware of the nature of the treating relationship between Williams and Dr. Moore, her family practitioner. The ALJ was concerned that Dr. Moore's opinion relied too heavily on subjective complaints from Williams and was contradicted by objective medical evidence (Id. at 1254). The ALJ cited several inconsistencies between Dr. Moore's opinion and the rest of the record. Notes from other medical providers describe Williams as doing well (Id.). Her self-reported physical activity contradicted Dr. Moore's recommendations (Id.). His opinion was inconsistent with Williams's heart specialists who did not consider her condition as dire as Dr. Moore. (DN 9-9 PageID # 1253-1254).

Importantly, this court's review is limited to determining whether the ALJ's decision "is supported by substantial evidence and made pursuant to proper legal standards." Rogers v Comm'r of Soc. Sec., 486 F. 3d 234, 241 (6th Cir. 2007). If the ALJ's decision was based on substantial evidence this Court must affirm, even if substantial evidence would also support the opposite conclusion. Gayheart, 710 F. 4d at 374. Substantial evidence is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. Smith, 893 F.2d at 108 (citing Richardson v. Perales, 402 U.S. 389 (1971)). Bound by this standard, the

---

[5] These factors are: 1) The length of the treatment relationship and frequency of examinations; 2) nature and extent of the treatment relationship; 3) the relevant evidence that the treating physician relies upon; 4) the consistency of the opinion with the record as a whole; 5) specialization of the treating physician.
[5] 20 C.F.R. § 416.927(c).

9

undersigned concludes the ALJ's finding that Dr. Moore's opinion was not entitled to controlling weight is supported by substantial evidence.

4. Dr. Swan's Medical Opinion

Williams argues that after discounting Dr. Moore's medical opinion, the ALJ erroneously assigned significant weight to the medical opinion of Dr. David Swan, M.D., a non-examining agency physician. Williams contends the ALJ's decision was not supported by substantial evidence (DN 14-1 PageID # 2219). *See* Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993). Notably, non-treating and non-examining source opinions are never given controlling weight. Their weight is assigned based on the 20 C.F.R. § 416.927(c)(2)-(6) factors if the treating-source opinion is deemed not controlling.

Dr. Swan recommended Williams be restricted to a reduced range of light exertion (DN 9-9 PageID #1253). The ALJ assigned significant weight to this opinion (Id.). Despite Williams claims to the contrary, the ALJ considered the appropriate factors when he analyzed Dr. Swan's opinion. The ALJ considered nature the and frequency of the relationship between Dr. Swan and Williams. He acknowledged that Dr. Swan is a state agency medical consultant, implicitly recognizing there was no treating or examining relationship between Dr. Swan and Williams. The ALJ explained that despite this limitation, state agency opinions are given by "highly trained medical providers who are familiar with the rules and regulations of disability determinations" (Id.). The ALJ also explained that Dr. Swan's opinion was more consistent with the whole medical record. The ALJ cited a conservative treatment regimen, "good" objective diagnostic imaging, physical and mental status examination results, and Williams's admitted activities of daily living as evidence that Williams can perform limited light work consistent with Dr. Swan's medical opinion (Id.).

Again, this Court is restricted to answering a limited inquiry: Is the ALJ's decision supported by substantial evidence? Rogers, 486 F. 3d at 241. If the answer to the above question is "yes," then the Court may not even inquire whether the record could support a decision the other way. Smith, 893 F.2d at 108 (citing Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n. 4 (6th Cir. 1986)). The undersigned concludes that the ALJ's decision to assign Dr. Swan's opinion significant weight was supported by substantial evidence.

5. Williams's Testimony

Williams next argues that the ALJ erred by failing to accept her testimony as fully credible and failing to state adequate reasons for doing so (DN 14-1 PageID # 2220). When considering symptoms reported by a plaintiff the ALJ must consider the plaintiff's testimony and its consistency with objective medical evidence and other evidence in the record. 20 C.F.R. § 416.929(c). The ALJ clearly did not afford much weight to Williams's testimony. However, he provided ample reasons for doing so. The ALJ found that the objective medical evidence and William reports of physical activity did not support symptoms with the intensity, persistence, and limiting effects described by Williams (DN 9-9 PageID #1252).

The medical evidence showed that Williams showed no signs of an abnormal heartrate or rhythm, no murmur, rub, or gallops (Id. at 1251). Chest pain was treated with nitroglycerin and there were no signs of coronary artery disease (Id). Williams was diagnosed with emphysema, but exams showed normal breath sounds and no respiratory distress (Id.). Chest imaging revealed clear lungs and no cardiac issues (Id.). Despite being diagnosed with hypertension, William's blood pressure was "under control" (Id.). Williams has degenerative disc disease, but exams showed normal range of motion in the neck, major joints, and normal motor function – contradicting her claims of debilitation (Id.).

The ALJ also emphasized Williams's admitted activities of daily living (Id. at 1252). Williams reported completing several daily household tasks including preparing meals, performing house work, and doing laundry (Id.). Importantly, Williams remained capable of completing strenuous tasks such as caring for wild animals (Id.). The ALJ noted Williams's testimony regarding her physical capabilities did not match her treatment records. For example, on May 23, 2013 she testified she had not done any yard work or gardening since 2010. But she reported in October 2011 that she regularly uses a tiller to clear brush from her property (Id.). At the same hearing she testified that she was no longer able to partake in wildlife rescue activities. But her treatment records and newspaper articles indicate she continued to rescue wildlife as much as three years later (Id.).

Subjective complaints of pain or other symptoms may support a disability claim. Blankenship v. Bowen, 874 F.2d 1116, 1123 (6th Cir. 1989). However, these complaints must be supported by objective medical evidence. Blankenship, 874 F.2d at 1123. In this case, the ALJ thoroughly examined the objective medical evidence and Williams's self-reported physical activity and found her claims of complete debilitation lacking. The ALJ's finding that William's testimony was "not entirely credible" is at the very least supported by substantial evidence (DN 9-9 PageID # 1253).

6. ALJ Independent Medical Findings

In her final argument at step four, Williams contends the ALJ improperly speculated to reach independent medical conclusions (DN 14-1 PageID #2220-2221). Williams adds that the ALJ's error went beyond mere speculation, but constituted "clear bias" against her (Id. at 2222).

This argument may be resolved quickly as it rehashes many of the same points in the sections above. Williams contends that the ALJ wrongfully interpreted Dr. Moore's treating notes,

12

leading him to inappropriately speculate about her ability to work. (Id. at 2221) *See* Rohan v. Chater, 98 F. 3d 966, 970 (7th Cir. 1996). Again, this Court's inquiry is limited to determining if the ALJ's decision was supported by substantial evidence, even if substantial evidence supports the opposite conclusion. Gayheart, 710 F. 4d at 374. The ALJ's decision to not assign controlling weight to Dr. Moore's opinion was based on substantial evidence, as was his decision to assign significant weight to Dr. Swan's opinion. The ALJ did not "speculate" as to Williams's work capabilities. He adopted the recommendations made by Dr. Swan (DN 9-3 Page ID #205-07). The ALJ's decision was not reached independently through his own interpretation of the medical records, rather it was dependent on Dr. Swan's analysis of the full medical record and subsequent recommendation (DN 9-9 PageID # 1253). The ALJ's determination that Williams possessed the residual functional capacity to perform light work with certain limitations was supported by substantial evidence.

B. Step Five

1. Williams's Argument

Williams's final argument comes at the fifth step in the sequential evaluation process. She argues that the ALJ improperly relied upon testimony from the Vocational Expert (VE) that was based on outdated occupational information. Specifically, Williams's challenges the VE's use of the Dictionary of Occupational Titles (DOT) rather than the updated O*NET database to determine jobs Williams is capable of performing. Williams argues that the DOT information is obsolete and therefore cannot be considered "substantial evidence." (DN 14-1 PageID # 2222).

2. Commissioner's Argument

The Commissioner argues that substantial evidence supports the ALJ's finding that Williams can perform a significant number of jobs that exist in the national economy (DN 19

13

PageID 2245-2246). The Commissioner adds that because Williams failed to make her arguments before the ALJ and the Appeals Council, it is inappropriate for her to raise these arguments for the first time before this Court (Id.). The Commissioner contends that a plaintiff must raise a conflict with the DOT at the hearing pursuant to SSR 00-4p. The Commissioner adds that the ALJ is under no obligation to investigate the accuracy of the VE's testimony and it was Williams's duty to cross-examine the VE about inconsistencies. In the alternative, the Commissioner argues that the ALJ's reliance on the VE's testimony that does not conflict with the DOT provides substantial evidence for the ALJ's step five finding (Id. at 2247).

3. Waiver of Claim

The Court will first address the Commissioner's argument that Williams waived this claim by failing to raise it during the administrative hearing and to the Appeals Council. To support this argument, the Commissioner relies on Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 636 (6th Cir. 2016). In Kepke, the Sixth Circuit rejected the argument that hypothetical questions posed to the VE by the ALJ were insufficiently specific. Id. at 636. The Court held that any error was "slight" and "not reversible" because the VE properly took Kepke's limitations into account. The Sixth Circuit cited Sims v. Comm'r of Soc. Sec., 5406 F. App'x 977 (6th Cir. 2011) merely to point out that the VE's testimony could have been refined through cross examination. Kepke, 636 F. App'x 625 at 636. The Sixth Circuit did not hold that the claim was waived for failure to sufficiently cross-examine the VE. Id.

A plaintiff must be familiar with the information at issue to broach the subject on cross examination. There are thousands of jobs listed in the DOT. Prior to the administrative hearing Williams had no indication that the VE would identify sorter, nut and bolt assembler, and routing clerks as jobs she was capable of working. To effectively cross examine the VE about his reliance

14

on the DOT, Williams's counsel would have needed to research the occupations using DOT and O*NET during the hearing. This is impractical and an unreasonable burden for a Plaintiff to bear.

Williams also did not waive this claim by failure to raise it to the Appeals Council. The Supreme Court has held that "claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues. Sims v. Apfel, 530 U.S. 103, 112 (2000). The Court noted that no statute or regulation required issue-exhaustion and a court-imposed issue-exhaustion requirement was inappropriate in a non-adversarial setting. Id. at 107-112. Thus, Williams may seek judicial review of her claim.

4. Obsolete Information in the DOT

The Court will now turn to the merits of Williams's claim. At the fifth step in the sequential evaluation process, the Commissioner must show that a significant number of jobs exist in the local, regional, and national economies that Williams can perform considering her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v) and (g); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). Essentially, the Commissioner can satisfy this burden in one of two ways. When a claimant's age, education, previous work experience, and residual functional capacity coincide with all the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden. 20 C.F.R. § 416.969; Grid Rule 200.00; Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Moon, 923 F.2d at 1181. However, when a claimant's residual functional capacity does not coincide with the criteria of a particular Grid Rule, the Commissioner is limited

15

to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. § 416.966(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

Here, the ALJ found that Williams's residual functional capacity did not coincide with the criteria of Medical-Vocational Rule 202.20 because she could not perform a full range of light work (DN 9-9 PageID #1255). Therefore, the ALJ departed from the guidelines and made a determination based on VE testimony (Id.). The VE found that Williams is capable of performing certain occupations found in the Dictionary of Occupational Titles (DOT), including: 1) Sorter (#222.687-014), 51,000 jobs in the national economy; 2) Nut and bolt assembler (#929.587-010), 54,000 jobs in the national economy; and 3) Routing clerk (#222.687-022), 45,000 jobs in the national economy. The VE added several jobs at the sedentary level of exertion that Williams can perform: 1) Final Assembler (#713.687-018), 33,000 jobs in the national economy; 2) Table worker (#739.687-182) 28,000 jobs in the national economy; and 3) Cuff folder (#685.687-014) 23,000 jobs in the national economy (Id. at 1303-1304). The ALJ determined that the VE's testimony is consistent with the information in the DOT (DN 9-9 PageID # 1302). *See* SSR 00-4p.

Here, Williams is challenging whether substantial evidence supports the ALJ's finding that she is capable of performing a significant number of jobs that exist in the national economy. The basis for this challenge is that the information provided by the VE was derived from outdated information in the DOT (DN PageID # 2225). The contested jobs – Sorter (#222.687-140), nut

and bolt assembler (#929.587-010), and routing clerk (#222.687-022) were last updated in 1977.[6] Notably, the three jobs at the sedentary level identified by the VE that Williams is capable of performing – Final assembler (#713.687-018), 33,000 jobs in the national economy; Table worker (#739.687-182), 28,000 jobs in the national economy, and Cuff folder (#685.687-014), 23,000 jobs in the national economy (DN 9-9 PageID #1304) – were not contested by Williams but were also last updated in 1977.

There is no "magic number" of jobs that qualifies as significant. Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988). The Court must make a fact specific inquiry guided by common sense and certain factors including: "the level of claimant's disability, *the reliability of the vocational expert's testimony*, the distance claimant is capable of traveling to engage in the assigned work, the isolated nature of the jobs, the types and availability of the work, and so on." Hall 837 F. 2d at 275 (emphasis added). Williams claims that because the VE testimony was based on obsolete information last updated in 1977 it is inherently unreliable (DN 14-1 PageID # 2224).

The DOT is a legitimate source of occupational information under Social Security regulations. 20 C.F.R. § 416.966(d)(1). However, it has not been updated since 1991, and has been supplemented by O*NET. O*NET is a database that has been continually updated since 2001. *See* Cunningham v. Astrue, 360 F. App'x 606, 616 (6th Cir. 2010). The DOT to O*NET Crosswalk Search function provided by the Department of Labor allows for comparison of DOT listed occupations with similar occupations in the modernized O*NET.[7] Crosswalk searches of the six occupations provided by the VE (3 light work, 3 sedentary) reveal inconsistencies that cast doubt on the reliability of parts of the VE's testimony. For example, Sorter (#222.687.140) and

---

[6] https://www.oalj.dol.gov/LIBDOT.HTM

[7] https://www.onetonline.org/

final assembler (#713.687-018) do not appear in O*NET and are replaced with a generalized position of "Production Worker" that does not enumerate specific skills and capabilities required to complete the job.[8] Nut and bolt assembler (#939.587.010) and Cuff Folder (#685.687-014) are replaced with "Helpers-Production Workers (51-9198.00).[9] The O*NET occupation description indicates the position requires interaction with industrial equipment that the VE testified Williams would not be able to operate due to her internal defibrillator (DN 9-9 PageID # 1306-1310).

However, the VE also identified Routing Clerk (#222.687-022) and Table Worker (#739.687-182) as occupations Williams is capable of performing. While, these DOT descriptions do not have an exact match in the O*NET they are similar enough to be considered reliable. The DOT description for Routing Clerk reads:

> Sorts bundles, boxes, or lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts. Places or stacks articles in bins designated according to route, driver, or type. may be designated according to work station as Conveyor Belt Package Sorter (retail trade). May sort sacks of mail and be known as Mail Sorter (r.r. trans.).[10]

The corresponding O*NET description reads:

> Summary Report for:
> 43-5071.00 -Shipping, Receiving, and Traffic Clerks
>
> Verify and maintain records on incoming and outgoing shipments. Prepare items for shipment. Duties include assembling, addressing, stamping, and shipping merchandise or material; receiving, unpacking, verifying and recording incoming merchandise or material; and arranging for the transportation of products.[11]

---

[8] https://www.onetonline.org/link/summary/51-9199.00

[9] https://www.onetonline.org/link/summary/51-9198.00

[10] https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02B.HTM
[11] https://www.onetonline.org/link/summary/43-5071.00

18

The description for Table Worker reads:

> Examines squares (tiles) of felt-based linoleum material passing along on conveyor and replaces missing and substandard tiles.[12]

The corresponding O*NET description reads:

> Inspect, test, sort, sample, or weigh nonagricultural raw materials or processed, machined, fabricated, or assembled parts or products for defects, wear, and deviations from specifications. May use precision measuring instruments and complex test equipment.
>
> **Sample of reported job titles:** Inspector, Picker / Packer, Quality Assurance Auditor, Quality Assurance Inspector, Quality Assurance Technician, Quality Auditor, Quality Control Inspector, Quality Control Technician, Quality Inspector, Quality Technician[13]

Social Security regulations make clear that the ALJ may take notice of the DOT when determining if jobs exist in the national economy. Cunningham, 360 F. Appx. at 615. However, that information must be reliable. Id. In Cunningham, the Court held that there was not substantial evidence to support the ALJ's finding that a significant number of jobs existed because the relevant DOT listed occupations were not found in the O*NET. Here, that is true of 4 of the 6 jobs enumerated by the VE. It is not true of the Routing Clerk and Table Worker positions. Admittedly, the DOT and O*NET descriptions for the jobs are not exact matches. However, because "descriptions contained in the O*NET are more expansive than those in the DOT, they do not raise doubts as to the reliability of the DOT descriptions." Earls v. Comm'r of Soc. Sec., 2011 WL 3652435, *7 (N.D. Ohio, August 2011).

If the Court considers only Routing Clerk and Table Worker positions, the number of jobs available is significant according to the Sixth Circuit. The VE identified 51,000 Routing Clerk jobs and 28,000 Table Worker jobs available in the national economy (DN 9-9 Page ID#

---

[12] https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT07D.HTM

[13] https://www.onetonline.org/link/summary/51-9061.00

1303-1304) – totaling 79,000 jobs. There is no bright-line that separates an insignificant number from a significant number of jobs. <u>Hall</u>, 837 F.2d 272 at 275. However, the Sixth Circuit routinely holds substantially fewer number of jobs to be significant. <u>Taskila v. Comm'r of Soc. Sec.</u>, 819 F.3d 902, 905 (6th Circ. 2016) (6,000 jobs in the national economy is significant); Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 579 (6th Cir. 2009) (2,000 jobs). Therefore, the undersigned concludes that 79,000 jobs in the national economy is significant. The ALJ's decision that Williams is capable of performing a significant number of jobs in the national economy is supported by substantial evidence.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**. **IT IS FURTHER ORDERED** that judgement is **GRANTED** for the Commissioner.

Copies: Counsel